UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,

        Plaintiff,        MEMORANDUM
                              AND
 - against -                ORDER

CHRISTOPHER DeMOTT and       00-CR-1068 (TCP)
CHRISTOPHER DAY,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,       MEMORANDUM
                              AND
        Plaintiff,        ORDER

 - against -                01-CR-978 (TCP)

CHRISTOPHER DAY,

        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PLATT, District Judge.

       The above-caption represents two separate cases involving two separate indictments, returned by two separate grand juries in two separate States and involving different facts in different criminal activities over different periods of time.

The first indictment, was returned by a Grand Jury in the Eastern District of New York (docket number 00-CR-1068-02), and charged that between January 1, 1996 and October 4, 2000, defendant Christopher Day, together with defendant Christopher DeMott, conspired to distribute and to possess with intent to distribute one thousand kilograms or more of marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

The second captioned case involves an indictment containing a single count which charges that between December 2000 and January 23, 2001, the defendant Christopher Day conspired, in Pennsylvania, with others to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). This case was transferred via Rule 20 from the Eastern District of Pennsylvania immediately prior to Day's sentence in this District.

The first indictment returned by an Eastern District of New York Grand Jury was filed in this Court on October 17, 2000 and the second indictment was returned by a Grand Jury in Eastern District of Pennsylvania and was transferred to and filed in this Court on August 29, 2001.

At no time were these two cases consolidated prior to sentence.

According to the Pre-Sentence Report which was prepared for both cases, the first of the two cases arose from the work of a Marijuana Task Force

formed in 1995, which was comprised of agents from the United States Drug Enforcement Administration (DEA), the Internal Revenue Service (IRS), United States Customs Service (Customs), Nassau and Suffolk County Police Departments (NCPD and SCPD) and Nassau and Suffolk County District Attorney Offices.

In approximately 1999, these agents uncovered that the defendants directed and participated in multiple trips to the southern border of United States for marijuana, resulting in approximately 8,000 pounds (four tons) of the drug being transferred to a stash house in Bayport, New York, via a trucking company owned by defendant Christopher Campbell Day.

The defendant Day was arrested on October 4, 2000. He advised federal agents that he had participated in approximately five marijuana trips over the past two years prior to his arrest and that he had participated in these smuggling trips during that period. The Government conservatively estimates that Day is accountable for smuggling 8,000 pounds (four tons) of marijuana and the smuggling of over a million dollars during the course of the (New York) conspiracy.

The investigation involving the second of the two captioned indictments commenced in May 1999, by the DEA's resident office located in

Allentown, Pennsylvania, and uncovered a large scale marijuana trafficking organization operating in Reading, Pennsylvania. Based on the aid of cooperating informants, agents of the DEA in Pennsylvania learned that Christopher Day was one of the transporters of marijuana utilizing a truck. Day was arrested for his participation in the Pennsylvania marijuana distribution on January 23, 2001, and according to the agents of the Government, he is accountable for the distribution of approximately 320 pounds of marijuana in this scheme in this case.

The United States Attorney Offices in the respective Eastern Districts of Pennsylvania and New York, arranged for the transfer of the second of the two captioned cases to New York for sentence by this Court. At no time, however, were these cases consolidated.

On September 25, 2001, the first of the above-captioned cases was called and the defendant Christopher Day withdrew his previously entered plea of not guilty and entered a plea of guilty to Count One of the first above-captioned indictments. On the same date, in the second of the above-captioned cases, defendant Day was arraigned by this Court for the first time on the second indictment, waived the public reading of the indictment and entered a plea of guilty thereto.

On September 25, 2001, the Probation Officer of the Eastern

District of New York, prepared a combined Pre-Sentence Investigation Report for both the Pennsylvania and the New York cases.

In paragraph 83 of the "Sentencing Options" in the report the Probation Department stated the following:

> Statutory Provisions:
>
> <u>Docket Number 00-CR-1068</u>: The minimum term of imprisonment is 10 years and the maximum term is life. 21 U.S.C. § 841(b)(1)(A).
> <u>Docket Number 01-CR-978</u>: The minimum term of imprisonment is five years and the maximum term is 40 years. 21 U.S.C. § 841(b)(1)(B).

In paragraph 84 of the "Guideline Provisions":

> Based on a total Offense Level of 27 and a criminal history of I, the Guideline imprisonment range is 70 to 80 months. However, due to the statutory minimum term of imprisonment, the effective guideline range is 180 months (ten years + five years). If the Court determines that the defendant has satisfied the mitigating factors in 18 U.S.C. § 3553(f), the statutory minimum does not apply.

On October 8, 2002, the Government delivered to this Court, a letter dated October 7, 2002, stating that the letter was being submitted in connection with the sentencing of the defendant Christopher Day (Day). It stated that:

> "based on information now available to the government, obtained from an independent investigation of the Federal

Bureau of Investigation ("FBI"), in which they have developed evidence that Day intentionally withheld information concerning the amount of drugs he possessed at the time of his arrest and took steps to sell the drugs while he was allegedly cooperating with the government.

\*   \*   \*   \*

As it appears that material omissions and misstatements of fact were relied upon by the government in formulating the letter motion pursuant U.S.S.G. § 5K1.1 previously filed, we would withdraw that motion at this time."

The net effect of this letter was, of course, to restore the mandatory minimums of the two statutes involved (ten years and five years) and to eliminate any mandatory application of the Guidelines. It, also, eliminated the applicability of the so called "safety valve" provisions under 18 U.S.C. § 3553(f).

The foregoing, also, meant that the Court was required to impose the statutory minimum of ten years in the New York offense and the statutory minimum of five years in the Pennsylvania offense.

In the Probation Report, the Probation Officer states that due to the statutory terms of imprisonment, the "effective Guideline range" is 180 months.

Quite apart from that, the Court was fully aware of the fact that in the New York case, according to the Probation Report, "the government conservatively estimates that DeMott (and Day) is accountable for transporting and distributing a total of 8,000 pounds of marijuana (equivalent to 3,628.8 kilograms and, in more graphic term, four tons) throughout the course of the conspiracy. Day informed agents that he had participated in a currency smuggling trip from approximately September 20 through September 27, 2000, during which he traveled to Laredo, Texas, with approximately one million dollars. The money was concealed in a cardboard box and he provided the funds to a non-known Mexican male upon arriving in Laredo, Texas. In the Pennsylvania case Day was accountable for the distribution of approximately 320 pounds of marijuana. On top of all of this, while cooperating with the Government, Day broke his word and agreement with the Government and was attempting to, effect the sales of additional drugs.

Under these circumstances, given the fact that the New York indictment in and of itself involved the smuggling of four tons of marijuana, one million dollars in cash and the violation of defendant's cooperation agreement with the Government and the fact that the statutory minimum for this offense alone was ten years imprisonment and the statutory maximum was life, it seemed

then and seems now to this Court that the appropriate sentence for these offenses alone should be 180 months (15 years). The sentence in the Pennsylvania case should be the same to run concurrent with the New York offenses; 180 months in this case also, being well within the maximum statutory limit of 40 years. Such being the case that was the sentence imposed by the Court.

It should be noted that the Second Circuit Court of Appeals mistakenly says that this Court imposed consecutive sentences, but in the examination of the judgment shows that they were to run concurrently.
SO ORDERED.

/S/
_____
United States District Court Judge, EDNY

Dated: Central Islip, New York
November  , 2006